# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00057-CV

**Sarah Simon, Appellant**

**v.**

**Johns Community Hospital, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 06-181-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Sarah Simon alleges that she was injured when she slipped on a foreign substance on a hallway floor in Taylor's Johns Community Hospital. At the time, Simon was employed as a nurse at the Hospital. Simon brought a "non-subscriber" suit against the Hospital, alleging negligence in failing to provide her a safe workplace. The Hospital filed a motion for summary judgment under the "no evidence" standard of Tex. R. Civ. P. 166a(i). The Hospital asserted that there was no evidence that it had actual or constructive knowledge of the substance on the floor, an essential element Simon must prove to establish the Hospital's liability to her as an invitee. *See, e.g.*, *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).[1] Simon filed a

---

[1] There is no dispute that Simon, as an employee, has the status of an invitee. *See Brookshire Grocery Co. v. Goss*, 208 S.W.3d 706, 712 (Tex. App.—Texarkana 2006, pet. filed) (acknowledging "the well-established basic principle that employees are treated as invitees").

response and attached evidence. The district court granted the motion and rendered final judgment that Simon take nothing on her claims. Simon appealed. We will affirm the judgment.

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id*. (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so

weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In her first issue, Simon contends that the district court erred in granting summary judgment because she pled general negligence theories that are not subject to the limitations or "sub-issues" that apply to premises liability claims. Specifically, Simon argues that she "pled and produced evidence that [the Hospital] not only failed to provide a safe place to work, but failed to provide proper safety training and supervision to employees and failed to develop and enforce proper policies and procedures regarding the inspection and cleaning of the common area hallway floors" where she allegedly fell. *See, e.g.*, *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 923-24 (Tex. 1981) (employer has duty to provide rules and regulations for the safety of employees); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) ("It is well established that an employer has certain nondelegable and continuous duties to his employees. Among these are the duty to . . . furnish a reasonably safe place in which to labor and the duty to furnish reasonably safe instrumentalities with which employees are to work."). These are all aspects of an employer's duty to use ordinary care in providing a safe work place. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794-95 (Tex. 2006) (per curiam); *Moore v. J. Weingarten, Inc.*, 523 S.W.2d 445, 447 & n.2 (Tex. Civ. App.—Beaumont 1975, writ ref'd n.r.e.). Although "[a]n employer is not an insurer of its employees' safety at work . . . an employer does have a duty to use ordinary care in providing a safe work place." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).

The focus of Simon's negligence allegations—what she claims the Hospital should have prevented, remediated, warned about, trained about, or had policies or procedures to prevent

or discover—is the substance on the floor on which she allegedly slipped. As Simon acknowledges in her brief, her "entire liability case revolves on whether the substance on the floor was a dangerous condition." The imposition of negligence liability for injury caused by a dangerous condition, as contrasted with injury that is the contemporaneous result of negligent activity, is what distinguishes a premises defect claim from a claim of ordinary negligence. *See*, *e.g.*, *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). Under such circumstances, this Court, reasoning that the employer's duty to provide a safe work place is coextensive with its standard of care to invitees generally, has imposed the elements of a premises liability cause of action. *See Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 71 (Tex. App.—Austin 1998, no pet.) ("To prevail on her premises liability claim [arising from slip-and-fall], Jackson must prove that Fiesta failed to maintain a safe work place. . . . The employer's standard of care for employees is therefore the same as the standard of care for invitees generally. Accordingly, before Fiesta can be held to have breached its duty to maintain a safe work place, Jackson must show as a threshold issue that Fiesta knew, or after reasonable inspection should have known, of an unreasonably dangerous condition."). Our sister courts have done the same. *See Allen v. Connolly*, 158 S.W.3d 61, 65-66 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Moore*, 523 S.W.2d at 447. In fact, the supreme court has observed in such a context that "the nature of the duty of the landowner to use reasonable care to make his premises reasonably safe may, in all material respects, be identical with the nature of the duty of the master to use reasonable care to provide his

4

servant with a reasonably safe place to work." *Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238, 240 (Tex. 1955).

Simon insists that she is not required to prove the elements of a premises liability claim because an employer's duty to its employees to provide them a safe work place is conceptually distinct and independent from the duties the employer owes to invitees generally. She points to language in the supreme court's *Sears* decision to the effect that "[t]he two fields of law (landlord-invitee and master-servant), are entirely separate and should be kept so." *Id*. at 240. Simon portrays this statement as a general principle that employee negligence claims against non-subscribers can never be subject to premises liability standards, but she divorces this language from the context in which the supreme court used it. *Sears* involved a suit by Robinson, a Sears employee, who alleged that he had been injured when slipping on oil that had spilled in a Sears warehouse. *Id*. at 238. Robinson had been aware of the oil spill prior to the accident. *Id*. at 239. Robinson sued Sears, a non-subscriber, for negligence and recovered a judgment for damages. *See id*. at 238. Before the supreme court, Sears argued that there was no evidence of its negligence because it owed no duty to its invitees regarding "open, obvious and known" dangers. *Id*. at 239. The supreme court rejected that argument, reasoning that this concept had not previously been applied to the master-servant context and that doing so would be inconsistent with the legislature's elimination of the assumption-of-the-risk defense in non-subscriber cases. *See id*. at 239-40. It was in this respect that the supreme court admonished that premises liability law and master-servant law "are entirely separate and should be kept so." *Id*. at 240. In its next sentence, however, the supreme court stated the general principle that "the nature of the duty of the landowner to use reasonable care to make his premises reasonably

5

safe may, in all material respects, be identical with the nature of the duty of the master to use reasonable care to provide his servant with a reasonably safe place to work." *Id*. We reject Simon's reading of *Sears*. *See Moore*, 523 S.W.2d at 447.**²**

This does not mean that *every* negligence claim brought by an employee against a non-subscriber employer is "inherently a premises liability suit," as Simon urges. As the Hospital observes, "[h]ad there been issues in the instant case not purely dependent on the existence of this dangerous condition, and on Johns Community Hospital's knowledge of its presence, this would not have been a premises liability case." But where, as here, an employee seeks damages for injuries caused by a dangerous condition, he or she must prove the elements of a premises liability cause of action. *Jackson*, 979 S.W.2d at 71. We overrule Simon's first issue.

In her second issue, Simon argues in the alternative that she has raised a fact issue concerning the Hospital's actual or constructive knowledge that a dangerous condition existed. The relevant dangerous condition here is the substance on the floor in which Simon slipped. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408-10 (Tex. 2006) (ice on floor was the relevant dangerous condition, not an ice dispenser from which ice tended to fall on the floor); *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536-37 (Tex. 1996) (leaky roof was not itself the dangerous condition, but a cause of the dangerous condition of a wet floor below). Simon described the substance as having the appearance of "chewed up Kellogg's corn flakes spit on the floor."

---

**²** As Simon emphasizes, language in the Texarkana Court of Appeals' *Goss* decision may be consistent with her view of *Sears*. 208 S.W.3d at 717-19. As the Hospital observes, however, *Goss* arguably is ultimately a "negligent activity" case rather than a premises liability case, as the claims centered on the store's manner of using "lowboy" carts. *See id.* at 714-16.

To prove the Hospital's actual or constructive knowledge that this substance was on the hallway floor, Simon must show: (1) the Hospital itself placed the substance on the floor; (2) the Hospital actually knew the substance was on the floor; or (3) it was more likely than not that the substance had been on the floor long enough to provide the Hospital a reasonable opportunity to discover it. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). Simon has not asserted that the substance was placed on the floor by the Hospital or its employees, nor has she claimed that a hospital employee actually knew of it. As for the amount of time the substance had been on the hallway floor, Simon points to evidence that along the same hallway, another employee had cleaned up "[a] small piece of cereal" that she thought was Captain Crunch. Besides the distinctions between the substances, the evidence does not reflect the amount of time between when the piece of Captain Crunch was cleaned up and when Simon fell, and the employee who cleaned it up did not know which event had occurred first. This evidence is insufficient to raise a fact issue concerning the Hospital's constructive knowledge that the substance in which Simon slipped was on the floor. *See Reece*, 81 S.W.3d at 816-17.[3]

As the supreme court emphasized in *Reece*, "[t]he rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with

_____

[3] Beyond this, Simon urges us to infer constructive knowledge of the condition from evidence that, in a hospital setting, it is not unusual for foreign substances to be deposited on hallway floors by people "crying, bleeding, vomiting, and dropping substances." This evidence is insufficient to support an inference that the Hospital had constructive knowledge of the presence of the substance in which Simon slipped. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408-10 (Tex. 2006).

constructive notice is firmly rooted in our jurisprudence. . . . The rule emerged from our reluctance to impose liability on a [premises owner] for the carelessness of another over whom it had no control or for 'the fortuitous act of a single customer' that could instantly create a dangerous condition." *Id*. at 815-16 (citations omitted). Applying this established principle, we overrule Simon's second issue.

Having overruled Simon's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 4, 2008